THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-00203-WJM-MJW

ICLICK INC., a Washington corporation,

Plaintiff,

vs.

ICLICK INTERACTIVE ASIA LIMITED, a foreign corporation,

Defendant.

**STIPULATION AND ORDER** (Docket No 31-2)

WHEREAS, iClick Inc. and iClick Interactive Asia Limited (each a "Party," and collectively "the Parties") have met and conferred pursuant to Fed. R. Civ. P. 26(f), IT IS HEREBY STIPULATED AND AGREED, by and between the undersigned attorneys for the Parties that the discovery of electronic and paper documents shall be undertaken in the following manner:

**1) Proposed Protocol for the Discovery of Electronically Stored Information (ESI)**

**a) Discovery Efforts**

  i) **Accessible ESI.** Each Party represents that it has taken reasonable steps to preserve reasonably accessible sources of ESI, including but not limited to prompt circulation of a litigation hold notice to individuals likely to have relevant documents in their possession. Reasonably accessible sources of ESI include active and archived email accounts, shared network drives, workstation or laptop hard drives, and portable storage devices and media. Each Party will conduct a diligent search of those reasonably accessible sources in which it has reason to believe relevant ESI responsive to the opposing Party's discovery requests will be found.

  ii) **Inaccessible ESI.** Based on the Parties' respective representations that reasonable and timely steps were taken to preserve reasonably accessible sources of ESI, the circumstances of this case do not warrant the preservation, review or production of ESI that is not reasonably accessible because it is unlikely that significant relevant

information would be located in those sources that is not otherwise available in reasonably accessible sources. That remote possibility is substantially outweighed by the burden and cost of preservation and/or review and production of ESI from those sources. The Parties agree that the following ESI is not reasonably accessible:

(1) Backup tapes and systems created for the sole purpose of disaster recovery.

(2) Voicemail, except for voicemail that is converted to text and forwarded to the recipient's email account, if any.

(3) Instant Messaging, except for instant messaging that has been logged in the ordinary course of business, if any; social networking data (including but not limited to Facebook, Twitter, MySpace).

(4) Legacy Data.

(5) Residual, deleted, fragmented, damaged, or temporary data (e.g., data stored in a computer's RAM).

(6) Encrypted data/password protected files, where the key or password cannot be ascertained after reasonable efforts.

iii) **International Employees.** The Parties anticipate that employees located internationally may have documents, including ESI that are potentially relevant to this matter. Each Party will take reasonable steps to obtain potentially relevant documents from sources outside the United States, including but not limited to solicitation of consents from relevant individuals. The Parties agree to advise each other of any delays or limitations in their ability to collect ESI from sources outside the United States.

b) **Filtering**

i) In an effort to control costs and reduce the volume of ESI that is not relevant to the matter, the Parties may filter ESI using the following techniques:

(1) **Search Terms.** The Parties may use reasonable search terms to filter for relevancy prior to review and production. With regard to custodial documents, including electronic mail, the Parties will meet and confer in good faith at a future date to attempt to reach an agreement on a list of custodians and search terms.

(2) **Duplicates.** The Parties may remove duplicative ESI to reduce unnecessary cost of reviewing and producing duplicative ESI. A piece of ESI may be removed as duplicative only if it is identical according to MD-5 hash value matching to another piece of ESI that is being produced. For example, for two e-mails to be considered identical, the email bodies, e-mail metadata, and the e-mail attachments must all

match. A Party may de-dupe all ESI across custodians, provided that indicated in a metadata field are all custodians who had copies of that ESI.

c) **Timeframe.**

   i) **Rolling Production.** The Parties will produce documents including ESI on a rolling production basis.

   ii) **Supplemental Production.** The Parties reserve the right to supplement production as needed.

   iii) **Additional Time Required.** Each Party recognizes that some ESI, such as CAD files, may require additional processing time. The party producing such ESI will make a good faith effort to advise the non-producing Party of the time necessary for processing and production.

2) **Form or Forms of Production**

a) **Paper.** Paper documents will be produced as electronic images. The images will be in either black-and-white, single page, 300 DPI, Group IV TIFF images or in a text searchable .pdf. Each Party will accommodate reasonable requests for production of images in color. At the option of the producing Party, images of paper documents may be organized according to the manner in which they were maintained in the ordinary course of business, including, where reasonably available, copies of file folders, envelopes, or labels or other identifying marks on the containers in which the documents were maintained, accompanied by documentation identifying how the documents correspond to the categories of documents requested pursuant to Fed. R. Civ. P. 34. The Parties agree that when custodian information is available, the documents shall be produced with information designating the custodian for each document. The Parties also agree to produce images with accompanying full text (except any text that has been redacted) as a .txt or a text searchable .pdf file.

b) **ESI**

   i) **Native or Image and Searchable Text File.** Each Party will produce all ESI in either native or image format.

   Documents produced in native format must be produced in their native application (e.g. Outlook, Excel, Word) and as kept in the ordinary course of business. The Parties agree that when custodian information is available, the native files shall be produced with information designating the custodian for each document.

   Except as noted below, documents produced in image format must adhere to the specifications noted above for paper documents. In the case of email that is a parent document within a user's mailbox (i.e., contains attachments such as other documents or emails), the producing Party shall also provide a document identification range to

determine email parent-child relationship. Email and attachment records shall not be separated except where one is privileged and the other is not; in such case, the non-privileged document will be produced and a place holder will be inserted for the privileged document.

To the extent reasonably feasible, each document produced in image format that is derived from ESI shall be accompanied by a corresponding document level text (.txt) file with full text that is extracted from the electronic file, not generated as an OCR file from the TIFF images. In the case of email, the corresponding text file shall include header information including: (1) the individual to whom the communication was directed (TO), (2) the author of the communication (FROM), (3) who was copied and blind copied on such email (CC and BCC), and (4) the subject line of the email (RE or SUBJECT). To the extent reasonably feasible, comments, notes, speaker notes, track changes, hidden rows, hidden columns, and any other hidden or invisible text shall be displayed in the image and extracted to the text file.

The Parties agree that documents produced either in image or native format shall be produced as they were kept in the ordinary course of business and shall be accompanied by documentation identifying how the documents correspond to the categories of documents requested pursuant to Fed. R. Civ. P. 34.

ii) **Exception — Spreadsheets.** ExcelTM and other types of spreadsheets are often dynamic in nature and may not be conducive to static image; therefore, a Party may request production of ExcelTM and other spreadsheets in their native application/s along with available metadata set forth on Appendix 1 which can be automatically populated if it appears that there is a legitimate need for information that cannot be derived from the static image, and that such request is reasonable. To the extent that print-outs or images of all or part of a spreadsheet were also maintained in static form (e.g. as a pdf attachment or a hard copy in a file), those documents will be produced as static images consistent with the specifications for production of paper.

   (1) The file name of any file produced in native format will be prepended with a document identification number.

iii) **Exception — Conversion Not Practicable.** Due to the nature or complexity of storage of some ESI (e.g., ESI in proprietary applications), conversion to image and searchable text may be overly burdensome. The Parties reserve the right to provide this ESI in a reasonable format.

iv) **Exception — Image Not Readable.** Where TIFF images of certain documents (for example, spreadsheets, PowerPoint TM files, or drawings) are not readable due to processing constraints, the Parties may request their production in native or other appropriate format.

c) **Metadata.** Each of the metadata and coding fields set forth in Appendix 1 that can be reasonably extracted using standard industry tools from a document shall be produced for that document. The Parties are not obligated to populate manually any of the fields in Appendix 1 if such fields cannot be extracted from the document using an automated process. The Parties will preserve all original documents, including the associated metadata, except for data in metadata fields that are frequently updated automatically, such as last-opened dates.

d) **Organization of Production.** Native files or images will be placed on CD, DVD, or hard drive(s) and transmitted to counsel. Each image or native file will be assigned a production number. Image files will also be accompanied by a source index and image cross-reference file in .TXT format indicating the begin/end document boundaries. Within reason, upon request, the producing Party will provide the cross-reference file in a format conducive to the other Party's litigation support database application. Native files and images will be produced as they were kept in the ordinary course of business and shall be accompanied by documentation identifying how the documents correspond to the categories of documents requested pursuant to Fed. R. Civ. P. 34.

e) **Non-Convertible Files.** Certain types of files such as system, program, and sound files are not be amenable to conversion into TIFF format. Such files will not be converted into TIFF format but will be represented in the form of a placeholder TIFF image. These files may be produced in a reasonably usable form upon a showing of the need for and relevance of the file. Examples of some of the file types that are not conducive to conversion into TIFF image include but are not limited to:

> *.exp *.ilk *.res *.trg *.tlh *.idb *.pdb *.pch *.opt *.lib *.cab *.mov *.mp3 *.swf *.psp *.chi *.chm *.com *.dll *.exe *.hlp *.ivi *.ivt *.ix *.msi *.nls *.obj *.ocx *.rmi *.sys *.tmp *.ttf *.vbx *.wav *.wpg *.iso *.pdb *.eps *.mpeg *.mpg *.ram *.rm *.psd *.ai *.aif *.bin *.hqx *.snd *.mpe *.wmv *.wma *.xfd *.db *.bat

Other files may not be able to be converted to TIFF image due to password protection, encryption or corruption (for example). If reasonable efforts to obtain useful TIFF images of these files are unsuccessful, these will also be accounted for with a placeholder image.

OLE embedded files need not be extracted as separate documents.

**3) Privilege**

a) Documents withheld, or redactions from documents produced, on privilege grounds will be identified in a privilege log.

b) Privileged information inadvertently produced in this matter will be handled in accordance with Fed. R. Civ. P. 26(b)(5) and Fed. R. Evid. 502 and as provided in the [Proposed] Protective Order that the Parties will submit to the Court at the same time as this Stipulation and [Proposed] Order.

4) **Redactions for Relevance.** Redactions on grounds of relevance, if any, must be labeled to identify relevance as the basis for the redaction. By agreeing to the foregoing the Parties do not waive any right they may have to challenge the propriety of the redaction.

5) **Right to Request Additional Information.** The agreements set forth herein are without prejudice to the right of a requesting Party to request additional information about ESI and discovery in accordance with the Federal Rules of Civil Procedure. However, a Party who, in good faith reliance upon paragraph 1(a)(ii) of this agreement, does not preserve ESI that is not reasonably accessible is not in breach of its discovery obligations.

Dated: October 5, 2015

Respectfully submitted,

/s/ *John P. Schmitz*
John P. Schmitz
Mills Schmitz Halstead & Zaloudek, LLC
600 Seventeenth Street, Suite 2800
Denver, Colorado 80202
(303)226-5861

*Attorneys for Plaintiff*

/s/ *Arminda B. Bepko*
Lawrence B. Friedman
Arminda B. Bepko
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York, NY 10006
(212) 225-2000

-and-

James G. Sawtelle
Christopher M. Jackson
Sherman & Howard L.L.C
633 17th Street, Suite 3000
Denver, Colorado 80202
(303) 297-2900

*Attorneys for Defendant*

SO ORDERED:
Dated October 6, 2015

Honorable Michael J. Watanabe
United States Magistrate Judge

6

## Appendix 1: ESI Metadata and Coding Fields

| Field Name | Populated For (Email, Edoc, or Both) | Field Description |
| --- | --- | --- |
| ProdBeg | Both | Control Numbers |
| ProdEnd | Both | Control Numbers |
| BegAttach | Both | Control Numbers (First production bates number of the first document of the family) |
| EndAttach | Both | Control Numbers (Last production bates number of the last document of the family) |
| Custodian(s) | Both | Custodian(s) name (ex. John Doe) |
| Size | Both | Size (in bytes) of the original document |
| EmailFolder | Email | The folder or folder path that contains the email. |
| NativeFile | Both | Native File Link |
| EmailSubject | Email | Subject line of email |
| DateSent | Email | Date email was sent |
| DateMod | Edoc | Date the document was modified |
| TimeSent | Email | Time email was sent |
| ReceiveTime | Email | Time email was received |
| ReceiveDate | Email | Date email was received |
| To | Email | All recipients that were included on the "To" line of the email |
| From | Email | The name and email address of the sender of the email |
| CC | Email | All recipients that were included on the "CC" line of the email |
| BCC | Email | All recipients that were included on the "BCC" line of the email |
| DateCreated | Edoc | Date the document was created |
| FileName | Edoc | Original file name of the edoc |
| Title | Edoc | Any value populated in the Title field of the document properties |
| Subject | Edoc | Any value populated in the Subject field of the document properties |
| Author | Edoc | Any value populated in the Author field of the document properties |
| DocExt | Edoc | File extension of the document |
| Redacted | Both | "X," "Y," "Yes," for redacted documents Otherwise, blank. |
| Confidentiality | Both | Indicates if document has been designated as "Confidential" or "Highly Confidential" under the Protective Order |

| HashValue | Both | MD5 hash value of the file generated at the document family level |